1

2                         UNITED STATES DISTRICT COURT

3                             DISTRICT OF NEVADA

4   In re:                                Case No. 3:20-cv-0682-RCJ

5   X-TREME BULLETS, INC.                 Jointly Administered Under Bankruptcy Case
                                          Nos. 18-50609-BTB (Lead Case), 18-50610,
6          Debtor.                        18-50611, 18-50613, 18-50614, 18-50615, 18-
                                          50616, and 18-50617.
7   HOWELL MUNITIONS & TECHNOLOGY,
    INC., AMMO LOAD WORLDWIDE, INC.,       **ORDER**
8   CLEARWATER BULLET, INC., HOWELL
    MACHINE, INC., FREEDOM MUNITIONS,
9   LLC, LEWIS-CLARK AMMUNITION COM-
    PONENTS LLC, and COMPONENTS EX-
10  CHANGE, LLC,

11         Jointly Administered Debtors.

12

13          The Appellant the United States of America, on behalf of the Department of the Treasury

14   Alcohol and Tobacco Tax and Trade Bureau (TTB) appeals the order of the United States Bank-

15   ruptcy Court for the District of Nevada disallowing, for a second time, TTB's claim asserted against

16   Debtor Howell Munitions & Technology, Inc. (HMT) for unpaid excise taxes on manufactured am-

17   munition under 26 U.S.C. § 4181 that were assessed against Twin Rivers, a non-debtor subsidiary

18   of HMT.

19          The Appellees X-Treme Bullets, Inc., Ammo Load Worldwide, Inc., Clearwater Bullet, Inc.,

20   Freedom Munitions, LLC, Howell Machine, Inc., Howell Munitions & Technology, Inc. (HMT),

21   Lewis-Clark Ammunition Components, LLC and Components Exchange, LLC (collectively Debt-

22   ors-Appellees), through their Liquidating Trustee, move to dismiss (ECF No. 16) on the ground that

23   the appeal has become moot.  TTB opposes the motion (ECF No. 19).  Having considered the record

24

1   and the arguments of the parties, the Court finds that the appeal is not constitutionally moot but is

2   equitably moot.  Accordingly, the Court will grant the motion and dismiss the appeal.

3   **I.      BACKGROUND**

4           TTB's present appeal is its fifth appeal to this Court arising from the underlying jointly ad-

5   ministered Chapter 11 bankruptcies of the Debtors-Appellees.  While the parties are familiar with

6   the procedural status, the Court will repeat and expand on the background the Court previously set

7   forth in its decision dismissing three of those prior appeals.  *See* Case No. 3:19-cv-0637-MMD, ECF

8   No. 78, pp 2-4.

9           The TTB assessed approximately $12 million in unpaid excise tax liabilities against Twin

10  River Contract Loading, Inc. (Twin River), an affiliate or subsidiary of HMT.  The assessment was

11  based on tax returns filed by Twin River reporting sales of ammunition it had manufactured.  Pur-

12  suant to 26 U.S.C. §§ 6321 and 6322, statutory liens for unpaid federal taxes arose in favor of the

13  United States upon assessment and attached to all property and rights to property belonging to Twin

14  River (the Tax Liens).  In January 2017, pursuant to 26 U.S.C. §§ 6321, 6322, and 6323, Notices of

15  Federal Tax Lien (NFTLs) were filed against Twin River, giving notice to third parties of the exist-

16  ence of the statutory tax liens against Twin River.

17          On June 8, 2018, Debtors-Appellees (which do not include Twin River) filed Chapter 11

18  petitions for relief in the Bankruptcy Court.  Their Chapter 11 bankruptcies were jointly administered

19  under Bankruptcy Case No. 3:18-bk-50609-BTB.  Zions Bancorporation, N.A. dba Zions First Na-

20  tional Bank (Zions) was Debtors-Appellees' primary pre-petition secured creditor.  On July 19,

21  2018, Zions filed a proof of claim (POC) against all Debtors-Appellees for approximately

22  $17,529,219 (Zions' Secured Claim).

23          TTB asserted, solely in Debtor HMT's bankruptcy proceeding, a security interest based on

24  the Tax Liens it assessed against non-debtor Twin River.  On December 3, 2018, TTB filed a Proof

of Claim in HMT's bankruptcy case to recover on the Tax Liens (TTB Claim).  TTB also contended, *inter alia*, that the bankruptcy estate had consolidated therein assets of non-debtor Twin Rivers to which the Tax Liens attached.  The TTB Claim against HMT is for an aggregate amount of approximately $12,183,415—about $5,079,998 secured and about $7,103,416 unsecured.  Debtors-Appellees objected to the TTB Claim.

In August 2019, Kash CA, Inc. (Kash) and Zions entered into the Kash Loan Purchase Agreement.  Pursuant to the Kash Loan Purchase Agreement, Kash agreed to pay Zions $8.8 million to acquire Zions' $17.3 million Secured Claim from Zions as well as Zions' liens encumbering the assets of Debtors-Appellees, and non-debtor affiliates of the Debtors-Appellees, Twin River and Big Canyon Environmental, LLC (Big Canyon).

In a separate agreement—the Kash Asset Purchase Agreement—Kash agreed to purchase the Debtors-Appellees's assets for a Purchase Price significantly less than $17.3 million Secured Claim it was purchasing from Zions.  The Kash Asset Purchase Agreement also provided that Kash would make Installment Payments totaling $2,876,000 payable over four years (the Kash Note) on this Purchase Price.

As particularly relevant to the present motion, Kash and Debtors-Appellees also entered into the Collateral Carve-Out and Subordination Agreement (the Purchaser's Subordination Agreement). Kash agreed to pay the Purchase Price provided in the Kash Asset Purchase Agreement by a carve-out of the Secured Claim that Kash would acquire pursuant to the Kash Loan Purchase Agreement for the benefit of the unsecured creditors not including TTB.

Related to the Sale Transaction, various parties entered into settlement agreements.  Zions and CFO Solutions, LLC dba Advanced CFO, Matthew McKinlay, Valerie Grindle and Sussman Shank LLP ("Advanced CFO Parties"), on one hand, and Debtors-Appellees and non-debtor affiliates of the Debtors-Appellees, Twin River and Big Canyon, and Howell, on the other hand, entered

into the Zions Settlement Agreement.  Zions required, as a condition to it entering into the Kash Loan Purchase Agreement, that the Debtors-Appellees, Twin River, Big Canyon and Howell settle and release their claims against Zions.

The Debtors-Appellees, Twin River, Big Canyon and Howell, on one hand, and Kash, on the other hand, entered into the Kash Settlement Agreement.  Kash required, as a condition to its entering into the Kash Loan Purchase Agreement and the Kash Asset Purchase Agreement, that Debtors-Appellees, Twin River, Big Canyon and Howell enter into this settlement agreement with it.  Debtors-Appellees, Twin River, Big Canyon and Howell agreed to affirm that, upon the effectuation of the Kash Loan Purchase Agreement, Kash, as the assignee of Zions' Secured Claim, would hold a "valid, enforceable, non-avoidable, perfected first-priority security interest in all property of the [Debtors-Appellees] constituting Zions's collateral," in accordance with the terms and conditions of the Kash Settlement Agreement.

The Debtors-Appellees and Twin River, on one hand, and Howell and certain relatives and other affiliates of Howell (the Howell Parties), on the other hand, entered into the Howell Settlement Agreement.  Howell required, as a condition to his entering into the Zions Settlement Agreement and the Kash Settlement Agreement and his giving the releases provided for thereby, that the Debtors-Appellees waive and release claims against the Howell Parties.

The Bankruptcy Court approved the three settlement agreements (the Compromise Order), granting the Debtors-Appellees' motion over the objection of TTB, in August 2019.  TTB appealed that decision.

On Debtors-Appellees' motion in September 2019, the Bankruptcy Court approved the sales procedures for the sale of Debtors-Appellees' property (the Sales Procedures Order). The underlying Sales Procedures Memorandum proposed to sell substantially all of the assets and properties of Debtors-Appellees, including without limitation, Debtors-Appellees' furniture, fixtures, equipment,

4

inventory, intellectual property rights, and accounts receivable associated with the operation of their businesses (the Marketed Assets).  The Sales Procedures Memorandum also noted that Debtors-Appellees had retained J. Michael Issa of Glass Ratner Advisory & Capital Group, LLC to assist them as their Chief Restructuring Officer in connection with supervising the operations of Debtors-Appellees' businesses and administering Debtors-Appellees' bankruptcy cases.   Issa would be responsible for:

> supervising the marketing of the Marketed Assets; interfacing with prospective bidders regarding qualification of bidders with respect to their participation in the Auction and performance of diligence investigations with respect to a purchase of the Marketed Assets; and for conducting the Auction. [He would also] supervise the sale process, the evaluation of any bids made for the Marketed Assets and the selection of the "Successful Bidder."

The Sales Procedures Memorandum further provided, among other things, that Kash CA, Inc. (Kash) was to be the "Stalking Horse Bidder."  This meant that Debtors-Appellees had accepted Kash's offer to purchase the Marketed Assets "subject to: (i) higher and/or better offers; and (ii) the approval of the Bankruptcy Court."  The Sales Procedures Memorandum provided that a sale would be by auction but also noted that Debtors-Appellees intended to file a motion asking the Bankruptcy Court to assign and sell to the Stalking Horse Bidder—Kash—the Marketed Assets subject to "any over-bids." A hearing was held at which TTB argued its objections to the Sales Procedures Memorandum. After that hearing the Bankruptcy Court entered the Sales Procedures Order. That order approved the Sales Procedures Memorandum and the sales and bidding procedures set forth therein as governing "the proceedings for the sale of substantially all of the assets and properties of the Debtors, including without limitation, any Auction that may be conducted in the Debtors' cases."

In October 2019, the Bankruptcy Court granted Debtors-Appellees' Motion for Order Authorizing: (1) Sale of Substantially all of the Assets of the Debtors Free and Clear of Liens and Interests in Accordance with the Provisions of Asset Purchase Agreement; (2) Assumption and

Assignment of Unexpired Leases and Executory Contracts; and (3) Rejection of Unexpired Leases and Executory Contracts and Abandonment of Property (the Sale Motion).  A hearing was held on the Sale Motion on October 16, 2019.  At that hearing, TTB contested, among other things, Kash being determined a good faith purchaser, putting on a witness to contend otherwise.  The Bankruptcy Court decided to "allow the sale and overrule the objection of the United -- of TTB."  In doing so, the Bankruptcy Court recognized that: "The TTB is afraid that taxes won't be paid going forward after the sale . . . but I think the reasons stated by the movant who wants to – who wants the sale, by the preponderance of the evidence outweighed the objections of the TTB."  The order granting the Sale Motion (the Sale Order) found, inter alia:

> G. . . . The Debtors' entering into and consummating the Kash Asset Purchase Agreement is a sound exercise of the Debtors' business judgment. The Sale Transaction contemplated by the Kash Asset Purchase Agreement is in the best interests of the Debtors' creditors and estates.

> H. Pursuant to the Court's Compromise Motion Order the Court has authorized Kash CA to make a credit bid to acquire the Purchased Assets up to the full amount of the Zions Secured Claim acquired by Kash CA from Zions. . ..

> I. Good cause exists to authorize the Debtors to sell the Purchased Assets free and clear of all Liens of any kind or nature because the requirements set forth in section 363(f) of the Bankruptcy Code, including section363(f)(4), have been satisfied.

> J. The Kash Asset Purchase Agreement was negotiated, proposed and entered into by and among the Debtors and Kash CA without collusion, in good faith, and from arm's length bargaining positions . . .. Accordingly, upon consummation of the Sale Transaction contemplated by the Kash Asset Purchase Agreement, Kash CA will be a buyer in "good faith" within the meaning of section 363(m) of the Bankruptcy Code . . ..

> . . .

> N. By the Sale Motion, the Debtors request that the Court authorize the sale only of property of the Debtors' estates under section 541 of the Bankruptcy Code, and not any property of any non-debtor entity. The Purchased Assets to be sold and assigned to Kash CA pursuant to the Kash Asset Purchase Agreement have been adequately disclosed and identified.

Of particular relevance to this motion, the Bankruptcy Court further found:

6

O. All payments or other consideration to be provided by Kash CA pursuant to the Kash Asset Purchase Agreement and the Purchaser's Subordination Agreement, including, without limitation, the release by Kash CA of its first-priority liens encumbering Excluded Assets ... and Kash CA's payment of the Installment Payments under the Note to be executed by Kash CA pursuant to the Kash Asset Purchase Agreement and the Purchaser's Subordination Agreement, will derive from a release of Kash CA's first-priority liens encumbering the Debtors' assets, or the proceeds of such liens, and therefore is property belonging solely to Kash CA, and not any property of any Debtors' estate.

Q. Good cause exists to approve the Purchaser's Subordination Agreement in connection with and in furtherance of the Sale Transaction. The Debtors have submitted legal authority and evidence adequate for the Court to approve the Purchaser's Subordination Agreement.

TTB timely appealed the Bankruptcy Court's Sale Procedure Order and Sale Order but did not seek a stay of the Sale Order.

The Sale Transaction closed on October 22, 2019.  TTB sought a stay of the Sale Transaction, which the Bankruptcy Court denied on January 7, 2020.  TTB did not appeal the denial of the stay of the Sale Transaction.

On January 17, 2020, the Bankruptcy Court entered its written Disallowance Order (the First Disallowance Order) disallowing the TTB Claim.  TTB appealed the First Disallowance Order but did not move for a stay of the Disallowance Order.

On July 31, 2020, this Court dismissed TTB's appeals of the Compromise Order, the Sales Procedures Order, and the Sale Order as statutorily moot under 11 U.S.C. §363(m) because "TTB indisputably failed to obtain a stay of the Sale Order, the Sale Transaction has been closed and fully consummated and the relief granted in the other orders—Compromise Order and Sales Procedures Order—were all *integral* to the Sale Transaction." *See* 3:19-cv-0637-MMD, at ECF No. 78, p. 12. TTB appealed this Court's Order to the Ninth Circuit (the Ninth Circuit Appeal).

7

However, this Court vacated the First Disallowance Order finding that the Bankruptcy Court abused its discretion in rendering its ruling without sufficient findings. *Id.* at ECF No. 76. The Court remanded the matter to the Bankruptcy Court for further proceedings.

On July 17, 2020, the Debtors-Appellees filed their Chapter 11 Plan. TTB did not object to the confirmation of the Plan.

On October 1, 2020, the Bankruptcy Court entered its order confirming the Plan (the Confirmation Order). TTB did not seek a stay of the Confirmation Order.

In November 2020, on remand from this Court, the Bankruptcy Court again disallowed the TTB Claim (the Second Disallowance Order), entering findings of fact and conclusions of law. TTB commenced this appeal on December 9, 2020, seeking review and reversal of the Second Disallowance Order. TTB did not, however, seek a stay of the Second Disallowance Order.

On March 25, 2021, TTB moved to dismiss the Ninth Circuit Appeal. The Ninth Circuit granted the motion the following day. Accordingly, the Bankruptcy Court's Compromise Order, Sales Procedures Order, and Sale Order have become final orders.

## II.    ANALYSIS

An appeal is constitutionally moot only when "it is impossible for a court to grant any effectual relief whatever." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). However, "[i]f there is any chance of money changing hands, [creditor's] suit remains live." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (citing *Chafin*, 568 U. S. at 172). The movant bears the "heavy" burden of demonstrating mootness. *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000).

Debtors-Appellees argue this matter has become moot because TTB can no longer recover on its TTB Claim from the Debtors-Appellees' remaining assets. Those assets are comprised of (a) the proceeds of the sale of Debtors-Appellees' assets to Kash pursuant to the Sale Order, and (b)

8

HMT's Bankruptcy Avoidance Claims.  As to the former category, Debtors-Appellees argue that the proceeds of the sale are not property of the Debtors-Appellees' estates pursuant to the Kash Asset Purchase Agreement and the Purchaser's Subordination Agreement, which the Bankruptcy Court approved in the Sale Order.  Because the Sale Order, Sales Procedures Order, and Compromise Order became final with TTB's dismissal of its Ninth Circuit appeal, Debtors-Appellees argue that there is no longer any avenue by which TTB can establish an interest in that property.

As to the Bankruptcy Avoidance Claims, Debtors-Appellees acknowledge that recoveries from HMT's prosecution of those claims are part of HMT's estate and would be available to pay the TTB Claim (assuming TTB is both successful in this appeal and then successful in having the TTB Claim allowed by the Bankruptcy Court).  They argue, however, that all of HMT's Bankruptcy Avoidance Claims have been fully resolved and all recoveries from those claims have already been disbursed to creditors in accordance with the Plan.  As such, Debtors-Appellees assert that HMT does not now have nor will it receive any additional recoveries from the prosecution of the Bankruptcy Avoidance Claims that could be used to pay the TTB Claim.

### A.    Proceeds from the Sale of Debtors-Appellees' Assets

TTB argues that it can establish an interest in the proceeds of the sale of Debtors-Appellees' assets because the determination of the extent and priority of its Tax Liens in that property did not become final with its dismissal of its Ninth Circuit appeal.[1]  TTB asserts that the Bankruptcy Court's Compromise Order approving the compromise reached between the Debtors-Appellees and other parties that they believed Zions' Lien had priority over TBB's Tax Lien did not and could not amount to a binding judicial determination of the extent and priority of the Tax Liens.  TTB further notes

---

[1]     While TTB continues to note its disagreement with the Bankruptcy Court's Sale Order approving the Purchaser's Subordination Agreement, that disagreement is irrelevant to whether its present appeal has been rendered moot because of the Sale Order becoming final.

that, in moving for the Sale Order, Debtors-Appellees acknowledged that TTB had asserted a secured claim against HMT, but that TTB did not have a valid lien against HMT.  Further, in the Sale Order, the Bankruptcy Court determined that "[g]ood cause exists to authorize the Debtors to sell the Purchased Assets free and clear of all Liens of any kind or nature because the requirements set forth in section 363(f) of the Bankruptcy Code, including section 363(f)(4), have been satisfied."

TTB raised a similar argument in opposing Debtors-Appellees' motion to dismiss its prior appeals of the Compromise Order, Sales Procedures Order, and Sale Order as statutorily moot under 11 U.S.C. §363(m).  There, as here, TTB asserted that "the priority and extent of the United States's tax lien has not been determined and remains a live issue."  TTB raised this argument to suggest that it did not need to seek a stay of the Sale Order because it was not seeking to overturn the transfer of estate assets.  However, as this Court noted in rejecting that argument, TTB itself asserted that an issue to be resolved by that prior appeal was:

> Whether the Bankruptcy Court erred and the United States' due process rights were violated, when the Bankruptcy Court impermissibly determined, first in an order approving compromises under Rule 9019, without an adversary proceeding or factual discovery, the relative priority and extent of the United States' lien against Debtors' and non-debtors' property, and by later reaffirming this order in its orders approving the sale procedures and sale.

Ultimately, this Court dismissed TTB's appeal of the Sale Order as statutorily moot because TTB had not moved to stay the sale, the Sale Transaction had been closed and fully consummated and TTB could not successfully challenge the Bankruptcy Court's finding that Kash was a good faith purchaser.

TTB's argument fails in this appeal because, through the Compromise Order, Sales Procedures Order, and Sale Order (in which the Bankruptcy Court approved the Kash Asset Purchase Agreement and the Purchaser's Subordination Agreement), the Bankruptcy Court necessarily determined that Kash had a first-priority secured claim in Debtors-Appellees' assets and that the extent

10

of that first-priority secured claim exceeded the value of those assets.  Even if the Court assumes that the Bankruptcy Court did not fully determine the exact extent and priority of TTB's Tax Liens in reaching this determination, the Bankruptcy Court did determine that TTB did not have any interest in the TTB Levied Funds and the proceeds of the sale of Debtors-Appellees' assets.   Regardless of TTB's continuing argument that the Bankruptcy Court could not properly reach that determination in the Compromise Order, it did reach that determination through its Sale Order.  Similarly, despite TTB's ongoing argument that this determination was wrong, it became final and binding on this Court when TTB dismissed its Ninth Circuit appeal.  Because the Compromise Order, Sale Procedures Order, and Sale Order have become final (with TTB's voluntary dismissal of the Ninth Circuit Appeal), TTB cannot establish an interest in the proceeds of the sale of Debtors-Appellees' assets, including the Installment Payments on the Kash Note.

TTB next argues, in its opposition, that it now has an interest in the proceeds of the Sale Transaction *under the Chapter 11 Plan.*  TTB argues that the Purchase Subordination Agreement was not incorporated into the Plan but was superseded by the Plan and that the Sale Order has been invalidated to the extent it is not consistent with the Plan.  TTB correctly notes that the Plan expressly provides that "all orders and judgments, including injunctions, entered by the Bankruptcy Court during the cases, and in existence on the Confirmation Date, shall remain in full force and effect from and after the Effective Date, to the extent not inconsistent with the provisions of this Plan or the Confirmation Order."  TTB has not, however, established that the Sale Order and its approval of the Purchaser's Subordination Agreement is inconsistent with any provision of the Plan.

TTB points to § 6.23.2 of the Plan, which provides that the "Liquidating Trust shall be funded for the benefit of each Debtor's Creditors, in part, by the following . . . (b) all right, title and interest of such Debtor in and to the Kash CA Note and all payments to be made thereunder, as allocated to such Debtor in accordance with the percentages set forth by the Allocation Schedule and the

provisions of this Plan."  TTB has not, however, shown that the "right, title and interest" of each Debtor to Installment Payments under the Bankruptcy Court's Sale Order and its approval of the Purchaser's Subordination Agreement Plan is *inconsistent* with the right, title, and interest of the Debtor to Installment Payments under any provision of the Plan.  Rather, and contrary to TTB's arguments, § 6.22 of the Plan expressly incorporates the Purchaser's Subordination Agreement. Section 6.22 of the Plan provides: "In accordance with the provisions of the Purchaser's Subordination Agreement (as approved by the Sale Order), all Cash of the Debtors as of the Effective Date and all Cash collected by the Debtors from and after the Effective Date, including without limitation, all payments collected by the Debtors on account of the Kash CA Note, shall be allocated to each Debtor in accordance with the percentages set forth by the Allocation Schedule."  The Plan does not provide TTB an interest in Debtors-Appellees' assets, including the Installment Payments on the Kash Note, that is greater than TTB's interest in the Installment Payments under the Sale Order and its approval of the Purchaser's Subordination Agreement.  Accordingly, under the Plan, which must give full force and effect to the Sale Order to the extent it is not inconsistent with the Plan, TTB cannot obtain any recovery on its TTB Claim from the proceeds of the sale of Debtors-Appellees' assets under the Sale Order and its approval of the Purchaser's Subordination Agreement.

**B.      Prosecution of Bankruptcy Avoidance Claims**

As Debtors-Appellees acknowledge, TTB's Claim could be paid from the recoveries from Bankruptcy Avoidance Claims.  They argue, however, that all of HMT's Bankruptcy Avoidance Claims have been prosecuted, resulting in a total recovery of $207,500.  They further note that, pursuant to the Plan, this entire amount has been disbursed among approximately 244 HMT creditors, leaving nothing with which TTB's Claim could be paid.

TTB counters that the Liquidating Trust Trustee's disbursement of the Liquidating Trust cannot render this appeal moot because the Plan establishes a Disputed Claim Reserve and prohibits

12

distributions without first funding the reserve.  TTB asserts that the Liquidating Trust Trustee was required, under § 5.3.1.4 of the Plan, to provide adequate reserves for TTB's contested priority, security, and general unsecured claims prior to disbursing any funds.  TTB's argument is without merit.

TTB's argument relies upon an incomplete summary of the Plan's provisions governing the Disputed Claims Reserve.  Pursuant to the § 8.4.3 of the Plan, the Liquidating Trustee is required to establish a Disputed Claims Reserve, or otherwise separately account for, any Disputed Claim in an amount equal to 100% of the Disputed Claim.  Pursuant to § 8.4.4, funds are not disbursed from the Disputed Claims Reserve on account of a Disputed Claim "until such Disputed Claim has been determined by a Final Order of the Bankruptcy Court."  The Plan extensively defines a "Final Order" at § 2.1.65.

Section 8.4.4 further provides that "[a]ny amount of a Claim that is disallowed pursuant to an order of the Bankruptcy Court shall be deemed to be extinguished and no Distribution of any amount shall be paid on account thereof."  The amount reserved for a disallowed Disputed Claim is released to the Liquidating Trust Trustee for funding distributions to creditors of the Debtor.  While a Final Order is required before the Liquidating Trust Trustee can disburse funds from the Disputed Claim Reserve, only an "order of the Bankruptcy Court" is required to extinguish a disallowed Disputed Claim and to release any funds reserved for that Disputed Claim.  Pursuant to the Plan, the Liquidating Trust Trustee is not required to fund the Disputed Claims Reserve for disallowed Disputed Claims and any reserved funds for that Disputed Claim are released when the Bankruptcy Court enters an order disallowing the Disputed Claim.  Thus, the Liquidating Trust Trustee can, in accordance with the provisions of the Plan, disburse funds from the Liquidating Trust to a junior creditor while the senior creditor appeals the disallowance of its Disputed Claim.

The Court notes, however, that while such a disbursement to a junior creditor is not *contrary* to the provisions of the Plan, Debtors-Appellees are incorrect that the disbursement renders TTB's

appeal of the Second Disallowance Order constitutionally moot.  The disbursement of funds from the Liquidating Trust prior to the Second Disallowance Order becoming final, even if permitted by the Plan, does not and cannot place the funds beyond the reach of the Court or of TTB.  Until a disallowance order becomes final, the senior creditor of the disallowed Disputed Claim retains the chance that its Disputed Claim will become an Allowed Disputed Claim.  The senior creditor will retain a chance of recovery that cannot not be mooted merely by the act of the Liquidating Trust Trustee disbursing the funds to a junior creditor before the disallowance order became final, even if such disbursement did not violate the Plan.

Accordingly, the Court finds that TTB's appeal is not constitutionally moot because it has a chance of recovery from HTM's prosecution of Bankruptcy Avoidance Claims.

### C.    Equitable Mootness

Equitable mootness is "a judge-made abstention doctrine unrelated to the constitutional pro-hibition against hearing moot appeals." *Rev Op Grp. v. ML Manager LLC* (*In re Mortgs. Ltd.*), 771 F.3d 1211, 1214 (9th Cir. 2014).  "Equitable mootness occurs when a comprehensive change of circumstances has occurred so as to render it inequitable for this court to consider the merits of the appeal." *In re Thorpe Insulation Co.*, 677 F.3d 869, 880 (9th Cir. 2012).  Equitable mootness is a prudential doctrine under which a district court may in its discretion dismiss a bankruptcy appeal "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re BGI, Inc.*, 772 F.3d 102, 107 (2d Cir. 2014).  "[W]hen a court applies the doctrine of equitable mootness, it does so with a scalpel rather than an axe.  To that end, a court may fashion whatever relief is practicable instead of declining review simply because full relief is not available*." In re Blast Energy Servs., Inc.*, 593 F.3d 418, 425 (5th Cir. 2010) (internal quotations and citations omitted).  Therefore, even if incomplete relief is available, the appeal is not moot.  *In re Thorpe*, 677 F.3d at 883 (citing *Paulman v. Gateway Venture Partners III, L.P.* (*In re Filtercorp,*

14

1    *Inc.*), 163 F.3d 570, 578 (9th Cir. 1998)).  The "party moving for dismissal on mootness grounds

2    bears a heavy burden."  *In re Thorpe*, 677 F.3d at 880 (citing *Jacobus v. Alaska*, 338 F.3d 1095,

3    1103 (9th Cir. 2003)).

4          In *Thorpe*, the Ninth Circuit set forth the following factors in determining whether an appeal

5    should be dismissed on equitable mootness grounds:

6          We will look first at whether a stay was sought, for absent that a party has not fully
7          pursued its rights.  If a stay was sought and not gained, we then will look to whether
           substantial consummation of the plan has occurred.  Next, we will look to the effect
8          a remedy may have on third parties not before the court.  Finally, we will look at
           whether the bankruptcy court can fashion effective and equitable relief without com-
9          pletely knocking the props out from under the plan and thereby creating an uncon-
           trollable situation for the bankruptcy court.

10   *In re Thorpe*, 677 F.3d at 881.

11         **i.  TTB Dismissed its Ninth Circuit Appeal**

12         This Court dismissed TTB's appeal of the Bankruptcy Court's Sale Order (and Sales Proce-

13   dure Order and Compromise Order) as statutorily moot because TTB had not sought a stay of the

14   Sale Order and the Sale Transaction had been closed and fully consummated.  TTB has now volun-

15   tarily dismissed its Ninth Circuit appeal of this Court's order dismissing its appeal of the Sales Order

16   as statutorily mooted.  As a result, the Bankruptcy Court's Sale Order (approving the Kash Asset

17   Purchase Agreement and the Purchaser's Subordination Agreement), Compromise Order, and Sales

18   Procedures Order are now final.  By voluntarily dismissing its Ninth Circuit Appeal, TTB can no

19   longer assert any rights to proceeds of the asset sale.  Further, and as relevant to equitable mootness,

20   this is a result of TTB's failure to fully pursue its rights to the proceeds of the asset sale.  TTB has

21   limited its right to be paid on the TTB Claim to the proceeds of the prosecution of HTM's

22

23

24

Bankruptcy Avoidance Claims and any proceeds that may "waterfall" from other Debtors to HMT's bankruptcy estate.[2]

### ii.  TTB Did Not Seek Stays Protecting its Rights to Proceeds of the Bankruptcy Avoidance Claims

TTB did not object to the Plan and did not seek a stay of the confirmation of the Plan.  TTB argues that it did not object to the Plan, and was not required to seek a stay, because the Plan provides an adequate treatment of the priority, secured, and general unsecured claim components of the TTB Claim.  As a result, TTB is now bound by the Plan provisions.  However, contrary to TTB's position, TTB did need to seek a stay of the Plan to fully pursue its rights to the proceeds of the Bankruptcy Avoidance Claims.  As the Court has previously noted, pursuant to the provisions of the Plan, the Liquidating Trust Trustee is not required to maintain a reserve in the Disputed Claims Reserve for disallowed claims.  Further, upon the order of the Bankruptcy Court disallowing a Disputed Claim, the Disputed Claim is considered extinguished and the Liquidating Trust Trustee is permitted to disburse any reserved funds to junior creditors.  Under the provisions of the Plan, the Liquidating Trust Trustee is permitted to move forward with a disbursement of funds that can cause a change of circumstances that could render it inequitable for this Court to consider the merits of TTB's appeal.  Thus, TTB's failure to object to the Plan and seek a stay of the confirmation of the Plan is relevant and indicates TTB has not fully pursued its rights to the proceeds of HMT's Bankruptcy Avoidance Claims.

---

[2]      To be certain, while proceeds of the asset sale might "waterfall" from other Debtors to pay HMT's creditors, TTB does not have a right to those funds.  Pursuant to the Sale Order and its approval of the Purchaser's Subordination Agreement, those funds are not property of any Debtor's bankruptcy estate and may only be distributed to creditors other than TTB.  Rather, TTB only has a right to funds that "waterfall" into HMT's bankruptcy estate.

TTB also failed to seek a stay of the distributions.  TTB asserts that it did not need to do so because, pursuant to the Plan, the Liquidating Trust Trustee was prohibited from making distributions to junior creditors without funding the Disputed Claim Reserve.  As previously noted, however, TTB is incorrect regarding its summary of the Liquidating Trust Trustee's treatment of disallowed Disputed Claims.  When the Plan was confirmed, TTB's Disputed Claim was still disallowed as this Court had not yet vacated the First Disallowance Order.  When the Bankruptcy Court entered the Second Disallowance Order, the Liquidating Trust Trustee was no longer required to maintain a reserve for TTB's disallowed Disputed Claim.  The Liquidating Trust Trustee was further permitted to distribute funds to junior creditors.  TTB's failure to seek a stay of the distributions upon the disallowance of the TTB Claim further indicates that TTB has not fully pursued its rights to the proceeds of HMT's Bankruptcy Avoidance Claims.

Similarly, TTB did not seek a stay of the Second Disallowance Order.  TTB does not offer any justification for its failure to seek a stay of the Second Disallowance Order.  TTB's failure to seek a stay of the Second Disallowance Order permitted the Liquidating Trust Trustee to distribute funds to junior creditors.  TTB notes that it placed distributees on notice that the United States reserved the right to recover distributed funds, in the event TTB succeeded on its appeal.  TTB, however, offers only its letter sent to the Liquidating Trust Trustee and Debtors in February 2021, in which TTB advised the Liquidating Trust Trustee to advise distributees that they may be ordered to disgorge funds they receive.  TTB's failure to seek a stay of the Second Disallowance Order further indicates that TTB has not fully pursued its rights to the proceeds of HMT's Bankruptcy Avoidance Claims.

### iii. Prejudice to Other Creditors

Debtors-Appellees note that the Plan has been substantially consummated.  Section 1101 of the Bankruptcy Code defines "substantial consummation" as:

17

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. §1101(2).

Debtors-Appellees represent that all of the Debtors-Appellees' assets have been transferred to the Liquidating Trust.  The Liquidating Trust Trustee has assumed, managed, administered and disposed of the Liquidating Trust pursuant to the Plan and Liquidating Trust Agreement.  They further represent that "substantial distributions" have been made to creditors.  All holders of allowed claims against Debtors Ammo Load Worldwide, Clearwater Bullet, and Lewis-Clark Ammunition Components have been paid in full.  The Liquidating Trust Trustee has made distributions to holders of allowed claims of Debtors Freedom Munitions and HMT.  (Debtors-Appellees have not made any representation regarding distributions to the creditors of X-Treme Bullets, Howell Machine, and Components Exchange.)  In their reply, Debtors-Appellees indicated that approximately 244 holders of allowed claims of Debtor HMT have received distributions.  Critically, Debtors-Appellees represent that HMT recovered $207,500 from its prosecution of Bankruptcy Avoidance Claims, that it will not recover any further funds from Bankruptcy Avoidance Claims, and that all such funds have been disbursed to pay HMT's post-confirmation expenses and to fund distributions required by the Plan.

TTB responds that the Plan is a liquidating plan with no continuing operations.  TTB notes that the transfer of Debtors-Appellees' assets to the Liquidating Trust does not equate to the transfer of property to creditors.  The Court agrees that, in the context of a liquidating plan, the substantial consummation of a Plan may carry less weight in determining the need to protect third party interests than in the circumstance of the substantial consummation of a reorganization plan.  Nevertheless,

18

the substantial consummation of a liquidating plan can, in the absence of an objection to a confirmation of the plan and the failure to stay distributions, be sufficient to warrant a determination that an appeal has become equitably moot. *See In re BGI, Inc.*, 772 F.3d at 110.  Debtors-Appellees have demonstrated that they have substantially consummated the Plan.  Further, they have shown that all of the proceeds of HMT's Bankruptcy Avoidance Claims have either been distributed to creditors or to pay for HMT's post-confirmation expenses.  Conversely, other than filing its appeal of the Second Disallowance Order, TTB's only act to protect its interest in the proceeds of HMT's Bankruptcy Avoidance Claims was its letter to Debtors-Appellees, three months after filing this appeal, advising them that TTB reserved its right to recover distributed funds, and suggesting the Debtors-Appellees notify distributees that they may be ordered disgorge received distributions.

The Court finds that, even though it may be conceivable to fashion effective relief to TBB, any such effective relief will be of extremely limited value as a result of the Bankruptcy Court's Compromise Order and Sale Order approving the Purchaser's Subordination Agreement, and TTB's failure to obtain a stay of that Order, resulting in this Court dismissing TTB's appeal of those Orders as statutorily moot.  TTB has failed to object to the confirmation of the Plan, to seek a stay of distributions under the Plan, and to seek a stay of the Bankruptcy Court's Second Disallowance Order. The Plan, though it is a liquidating plan, has been substantially consummated.  Under the totality of these circumstances, the Court finds that attempting to fashion effective relief in favor of TTB, assuming that it would succeed in its appeal of the Second Disallowance Order, would be inequitable. Accordingly,

THE COURT **ORDERS** that Debtors-Appellees' unopposed Motion for Leave to File Excess Pages (ECF No. 7) is GRANTED;

THE COURT FURTHER **ORDERS** that Debtors-Appellees' Motion to Dismiss (ECF No. 16) is GRANTED as follows: This appeal is DISMISSED as equitably moot.

THE COURT FURTHER **ORDERS** that Debtors-Appellees' Motion to Strike Reply (ECF No. 11) is DENIED as moot.

THE COURT FURTHER **ORDERS** that Appellant's Motion for Hearing (ECF No. 24) is DENIED as moot.

DATED this 29th day of September 2021.

_____
Robert C. Jones
United States District Judge

20